IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **WES NEWMAN**, an Illinois resident,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**ROMAN FINANCIAL GROUP LLC**, a Florida registered company,<br><br>*Defendant.* | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

**CLASS ACTION COMPLAINT**

Plaintiff Wes Newman ("Plaintiff Newman" or "Newman") brings this Class Action Complaint and Demand for Jury Trial against Defendant Roman Financial Group LLC ("Defendant Power" or "Roman Financial Group") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing pre-recorded calls to consumers (or having its agents place calls to consumers on its behalf) without consent including calls to phone numbers that are registered on the national Do Not Call registry ("DNC"). This lawsuit arises from Defendant Roman Financial Group's deliberate and systematic use of telemarketing calls to generate sales for its insurance solutions in violation of the TCPA. Roman Financial Group knowingly relies on an extensive network of independent agents, lead generators, and telemarketers who operate on its behalf, making unsolicited calls to consumers—including those on the National Do Not Call Registry ("DNC")—without their consent. Defendant cannot evade liability by outsourcing its telemarketing campaigns. A seller like Roman Financial Group is responsible for the conduct of its telemarketers when they act with actual authority, apparent authority, or Roman Financial Group ratifies their conduct by accepting the benefits. Despite

having actual knowledge that its independent agents repeatedly violate the TCPA, Roman Financial Group has failed to implement an adequate internal do-not-call policy or take meaningful steps to curb illegal calls made on its behalf. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Newman, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Newman is a resident of Park Ridge, Illinois.

2. Defendant Roman Financial Group is a company registered in Florida with its headquarters located in Miami, Florida.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over Defendant Roman Financial Group because it is headquartered in this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is headquartered here, and transacts business from this District.

## INTRODUCTION

6. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's

representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 4.2 billion robocalls were placed in August 2025 alone, at a rate of 133.9 million per day. www.robocallindex.com (last visited September 3, 2025).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules*

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

*and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

14. Roman Financial Group is a financial service brokerage that provides insurance products to consumers throughout the US.[3]

15. Roman Financial Group advertises its insurance products through a network of independent agents and lead generators, some of whom use illegal telemarketing to generate sales leads.

16. In fact, Roman Financial Group is aware that its lead generators engage in illegal telemarketing to generate leads.

17. Former Roman Financial Group employees have posted about their experiences working for the Defendant which include comments about their knowledge of foreign third-party vendors who placed unsolicited, unlawful calls to consumers for their benefit, including:

> They are all about recruitment since they get a cut of whatever sales their downline makes. It seems like a MLM, but it isn't since the leads come from a third-party vender. The third-party venders were all based overseas and had to be paid via PayPal.
>
> We were basically trained to harass people until they gave into us. We were told to keep calling leads until we were blocked. We could not take no for an answer. I had disabled people tell me about how they were barely able to put food on the table and could not afford another bill, yet my upline (who was listening to the call) kept pushing for the sale.[4]

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

[3] https://www.linkedin.com/company/romanfinancialgroup/about/

[4] https://www.reddit.com/r/IsItBullshit/comments/10w9sjy/isitbullshit_insurance_brokerage_roman_financial/

18. In response to the aforementioned comment, another former employee wrote about how Roman Financial Group's foreign third-party vendors disregard the DNC and even trick consumers into receiving calls:

> **peetscoffeeandtea** • 2y ago
>
> You left out one critical component. Those "third party leads" are pushed because the owners get kickbacks from them. Only a few people know this, and it's extremely difficult to prove.
>
> It's set up this way because the leads are illegally obtained (do not call lists are completely disregarded - the initial calls come from a foreign country). So when you call those leads, you are technically not violating any do not call laws as the "lead" was tricked into agreeing to a call back.[5]

19. Other former employees responded to the above response, pointing out additional issues with the vendors Roman Financial Group uses to generate business from consumers, including:

> **greenyee** • 2y ago
>
> I didn't know that, but I don't doubt it for a second. We would always get a recording with the initial call, and half the time they would say yes without knowing what they were saying yes to. I've also heard recordings where people have straight up said no and they still sold it to me as a lead.
>
> 1 Reply Award Share ···[6]

> **Accomplished-Gur3389** • 2y ago
>
> Thanks for posting this, I got into Roman recently from a friend, I have done the interview and exam, but I haven't done any work for them yet. I was always somewhat iffy and skeptical about the company and this (and the BBB complaints and Roman's response to them lol) was enough for me to realize they aren't it.
>
> I'll just ghost them and work with a more reputable company, no way I'm going to spend my hard earned money on those "leads" and illegally harass people to buy their products.
>
> I'm also sorry what you went through, that shit must've been tough.
>
> 1 Reply Award Share ···[7]

[5] Id.
[6] Id.
[7] Id.

20. Consumers posted complaints online about unsolicited calls they received from foreign third-party vendors directly to Roman Financial Group, including:

**Initial Complaint**

**Date:** 06/28/2023

**Type:** Service or Repair Issues

**Status:** Answered

I have been getting illegally telemarketed by Senior Benefits, American Benefits, etc. for years now, probably ***** calls per week to numbers listed on the *** list for many years. A second Roman Financial Group insurance agent called today, said he was following up on a Senior Benefits lead. The first Roman FG agent was also following up on a call made to me by Sr ********* The first agent continued calling after I told him I'm listed on the N***R and specifically asked for his written *** policy, which he's required to have available on demand under 47 CFR 64:1200 (c). The overseas call center is most likely in ********. Roman Financial continues to utilize Senior/American Benefits, et al. for leads even after others have made BBB complaints. I read RFG's response to an earlier complaint, and it'll be most interesting to see RFG tell their story to a judge and jury.

**Business Response**

**Date:** 06/28/2023

Hello,
We would suggest you stop agreeing to a call back when Senior Benefits calls, this way none of our agents will get your name and number as a lead. If you get called by Senior benefits simply tell them to take you off of their list and you will not be called anymore by them.
Thank you. [8]



**George M.**
Dallas, TX
0 1 0

Jun 14, 2022

First to Review

I've received a number of telemarketing calls from this company. They have continued after I told them of my DNC status. The calls are offering "Final Burial Insurance" and the agent I've spoken with is Joshua Sidary.

These calls seem to be the result of an overseas boiler room operation. We were exchanging e-mails, and their response was (apparently) to block my e-mail address & calls to them go straight to voicemail. [9]

---

[8] https://www.bbb.org/us/fl/miami/profile/insurance-agency/roman-financial-group-llc-0633-92025272/complaints
[9] https://www.yelp.com/biz/roman-financial-group-miami

21. Unfortunately, some of these calls from or on behalf of Roman Financial Group, are being placed to consumers without consent, including to consumers that registered their phone numbers on the DNC, as per Plaintiff's experience.

22. Consumers are also receiving unsolicited pre-recorded calls from, or on behalf of Roman Financial Group, as per Plaintiff's experience.

23. The Federal Communication Commission has instructed that corporations such as Roman Financial Group may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

24. Defendant benefited from these unlawful calls by profiting from every resulting insurance sale.

25. In response to these calls, Plaintiff Newman brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

**PLAINTIFF NEWMAN'S ALLEGATIONS**

26. Plaintiff Newman is the sole owner and user of his cell phone number ending in 4523.

27. Plaintiff Newman's phone number was registered on the DNC on July 26, 2005.

28. Plaintiff Newman uses his cell phone number for personal use only as one would use a landline telephone number in a home.

29. Plaintiff Newman uses his cell phone number primarily to communicate with friends and family. It is also used to schedule personal appointments and for other household needs.

30. Plaintiff Newman pays for his cell phone number in full. The phone number is not reimbursed by a business.

31. In early-2022, Plaintiff Newman began receiving unsolicited calls about getting final expense insurance.

32. Plaintiff Newman was not looking to get a quote for final expense insurance.

33. The calls were primarily from "James" with "American Benefits", who is an automated artificial agent who can provide limited interactions and responses to a consumer.

34. Plaintiff Newman told "James" to stop calling, but the call would disconnect and the calls would continue.

35. On April 14, 2022 at 4:42 PM, Plaintiff Newman received an unsolicited call to his cell phone from 928-363-9873.

36. When this call was answered, there was an audible pause before Plaintiff Newman heard a boop sound followed by a greeting from an automated agent named "James" with "American Benefits" who was an artificial agent made to sound like a human agent.

37. This was the same artificial agent who had contacted the Plaintiff in previous calls.

38. The artificial agent asked Plaintiff Newman to confirm his age, which Plaintiff did in order to identify which real company was behind the calls.

39. The automated agent then stated that it would bring an insurance specialist on the phone.

40. An overseas real human agent named Bill, introduced himself and asked some qualifying questions.

41. In order to confirm the name of the entity behind the calls, Plaintiff Newman agreed to receive a call back from a licensed agent.

42. Plaintiff Newman was told that he would receive a call from an agent named Anthony and the call was ended.

43. Plaintiff Newman immediately called 928-363-9873 back, but the number was not in service.

44. On April 22, 2022 at 11:53 AM, Plaintiff Newman received a call to his cell phone from 940-293-4228.

45. When Plaintiff answered this call, an employee introduced himself as Anthony Palmieri.

46. Palmieri said that he was calling to follow up on a call from American Benefits regarding final expense insurance.

47. Plaintiff Newman told Palmieri that he wanted to find out who was the company behind the calls made by "American Benefits," because they were placing unsolicited pre-recorded calls to his cell phone number that is registered on the DNC.

48. Plaintiff Newman made it clear to Palmieri that he was not looking to get an insurance quote.

49. Palmieri confirmed that he would let the management of his company know, and revealed that he worked for Roman Financial Group.

50. Palmieri also admitted that Roman Financial Group knows that they are accepting transferred leads from a call center that uses the fake name "American Benefits."

51. Palmieri told Plaintiff that the sales calls would come to an end, also admitting that Roman Financial Group can control who the call center calls and when.

52. Plaintiff Newman confirmed that somebody from Roman Financial Group would follow-up to reveal which call center is behind the calls and the call was ended.

53. Anthony Palmieri was a broker at Roman Financial Group at the time he called and spoke to Plaintiff Newman:



[10]

54. By June 6, 2022, Plaintiff Newman had received additional unsolicited pre-recorded calls from "James" from "American Benefits," but he didn't hear back from anybody at Roman Financial Group.

55. Plaintiff Newman sent an email to Roman Financial Group detailing the calls he had received and asking to confirm which call center was behind the original outreach calls to him from "American Benefits" but he did not receive a response.

56. Plaintiff Newman sent a second email to Roman Financial Group on June 9, 2022, but he received a notification indicating that the email was rejected – i.e. blocked.

---

[10] https://www.linkedin.com/in/anthony-luke-palmieri-971910193/

57. During this same time, Plaintiff Newman received more unsolicited calls from foreign callers who claimed they were from “Senior Benefits.”

58. Plaintiff Newman received an unsolicited call to his cell phone on July 13, 2022 at 4:28 PM from 757-216-3696.

59. When Plaintiff Newman answered this call, an employee introduced himself as Austin Garrett. Garrett was calling to follow up on a call that Plaintiff received from “Senior Benefits” to provide a quote on final expense insurance. Plaintiff Newman asked Garrett which company he works for, but Garrett would only say that he was an independent agent. Plaintiff Newman disconnected the call when Garrett refused to identify the company he works for.

60. Plaintiff Newman then received two back-to-back calls from 757-439-9818 with a caller ID displaying the name Austin Garrett. The calls were not answered. Plaintiff Newman looked up Austin Garrett online and saw that he was working for Roman Financial Group.

61. Plaintiff Newman texted Garrett at 757-439-9818 and asked if Garrett was employed by Roman Financial Group. Garrett replied back by text confirming that he was.

62. As per the Roman Financial Group Instagram page, Garrett was employed by Defendant at the time he called Plaintiff Newman:



[11]

63. Plaintiff Newman did not provide consent to Roman Financial Group and its third-party vendors to receive calls, including pre-recorded calls to his cell phone number.

64. The unauthorized solicitation telephone calls that Plaintiff Newman received from or on behalf of the Defendant have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

65. Seeking redress for these injuries, Plaintiff Newman, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

66. Plaintiff Newman brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) the Defendant or an agent working on behalf of the Defendant called more than one time, (2) within any

[11] https://www.instagram.com/p/CfeV0dRL_as/?hl=en

12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason the Defendant or an agent on behalf of Defendant called Plaintiff.

**Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent on Defendant's behalf) called on their cellular telephone number (2) using a pre-recorded voice message or automated attendant.

67. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Newman anticipates the need to amend the Class definition following appropriate discovery.

68. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

69. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) whether Defendant, or an agent working on its behalf made calls using a pre-recorded voice to cellular telephone numbers without consent;

(c) Whether the Defendant or an agent calling on behalf of the Defendant placed multiple calls \ within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

70. **Adequate Representation**: Plaintiff Newman will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Newman has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Newman and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Newman nor his counsel have any interest adverse to the Classes.

71. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Newman. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to

obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Newman and the Do Not Call Registry Class)**

72. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

73. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

74. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

75. The Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Newman and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

76. The Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Newman and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by

or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

77. As a result of Defendant's conduct as alleged herein, Plaintiff Newman and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

78. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## SECOND CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Newman and the Pre-recorded No Consent Class)**

79. Plaintiff repeats and realleges paragraphs 1-71 of this Complaint and incorporates them by reference herein.

80. Defendant Roman Financial Group, or an agent working on its behalf transmitted unwanted solicitation telephone calls to Plaintiff Rossi and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message/automated attendant.

81. These pre-recorded voice calls were made *en masse* without the prior express consent of the Plaintiff Rossi and the other members of the Pre-recorded No Consent Class.

82. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Rossi and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation, as well as injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring the Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Newman requests a jury trial.

Respectfully Submitted,

**WES NEWMAN**, individually and on behalf of all others similarly situated,

DATED this 14th day of September, 2025.

By: /s/ *Stefan Coleman*

Stefan Coleman
law@stefancoleman.com
COLEMAN PLLC
18117 Biscayne Blvd, Suite 4152
Miami, FL 33160
Telephone: (877) 333-9427

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*